IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Michael Gebhardt,

        Plaintiff,

vs.                        Case No. 10-4142-JTM

Exide Technologies,

        Defendants.

MEMORANDUM AND ORDER

Plaintiff Michael Gebhardt alleges that he was illegally terminated by his employer, defendant Exide Technologies, in retaliation for his exercise of his rights granted by Kansas' workers' compensation laws, K.S.A. 44-501 et seq., and in retaliation for his use of leave allowed by the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. Exide contends that it properly fired Gebhardt after he assaulted another employee, and has moved for summary judgment. For the reasons stated herein, the court grants Exide's motion.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual

allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

D.Kan.R. 56.1 provides that a party opposing a motion for summary judgment who wishes to rely on facts not cited by the movant may file a "concise statement of material facts" in support of their response. Plaintiff's Response memorandum violates this rule by presenting, as an Appendix to his response, 220 separate statements of fact summarizing the depositions taken in the action, few of which have any direct relationship to the issues raised by Exide's motion. Indeed, the Response brief itself directly cites only 24 of the 220 purported facts.

Further, even if the court were to take up the plaintiff's Appendix, none of the alleged facts cited in it preclude an award of summary judgment, as these facts are either simply irrelevant, rank speculation, or otherwise inadmissible. Accordingly, the following findings of fact relate only those findings submitted by the parties for which are both relevant and supported by admissible evidence.

*Findings of Fact*

Exide, a Delaware corporation with its corporate headquarters in Milton, Georgia, produces, distributes and recycles lead-acid batteries.

Gebhardt is an individual residing in Salina, Kansas. Exide hired Gebhardt as Paste Machine-Plate Unloader on June 9, 2002. Exide terminated his employment on September 3, 2008.

Exide's Employee Handbook states that the company complies with the requirements of the FMLA. The Handbook also contains a section entitled "Common Dischargeable Type Offenses," which begins:

> If an employee commits one of the following offenses, they subject themselves to immediate discharge unless there are mitigating circumstances. Before a discharge action is finalized, the employee will be placed on an indefinite suspension from work to allow the company, including the Plant Manager, to review all the facts of the case and to ensure that the discharge action is appropriate.

Gebhardt notes that Exide has a progressive discipline policy, but the Handbook also specifically warns that "Nothing in this policy shall be deemed to limit the right of the company to terminate an employee at any time for any reason."

The Handbook lists 20 "dischargeable type offenses," including:

a.) Personal Conduct: Disorderly, immoral, or indecent conduct.
b.) Insubordination: This includes the intentional violation of any rule or regulation, or the refusal to obey any legitimate instructions given by a supervisor or other management personnel.
. . .
d.) Disorderly Conduct: This includes items such as fighting, physical violence, playing pranks, horseplay, intimidation, molestations, tripping, pushing, kicking, or any other conduct which may interfere with an employee or group of employees. The action need not cause physical injury or damage to be considered disorderly.
e.) Treatment of Property: Deliberately destroying, damaging or defacing company property, tools, equipment, protective gear, or the property of others while on company property or the misuse of such property. Likewise, malicious mischief resulting in injury or destruction of company property or the property of others is prohibited.

. . .

l.) Interference with Production: Any willful intent to interfere with or obstruct in any manner the normal operation of the plant. This includes delaying or restricting production or inciting others to delay or restrict production as well as any other failure to perform work or slow down or work stoppage.

> . . .
>
>    n.) Safety: Flagrant disregard of safety rules and practices or any other unsafe acts which endanger other employees.

The section concludes by stating:

> The foregoing rules are not intended to be all-inclusive of required discipline, proper standards of conduct, or obligations of employees, and shall not limit the Company's right to initiate corrective disciplinary actions for any other causes.

On the date of Gebhardt's hiring, he acknowledged that he received the Employee Handbook that contains Exide's FMLA policy and the "Common Dischargeable Type Offenses" section.

On or about March 6, 2003, Gebhardt reported to Exide's plant nurse that he was experiencing pain in his right wrist. According to his interrogatory responses, the injury Gebhardt suffered on March 6, 2003, is the only injury as to which he exercised his rights pursuant to Kansas' workers' compensation laws.

On September 3, 2003, Gebhardt underwent a surgery related to the March 6, 2003, injury. On October 14, 2003, Gebhardt underwent another surgery where his doctor performed a subcutaneous anterior transposition of the ulnar nerve on the right, along with right carpal tunnel release.

On June 19, 2007, Gebhardt underwent another surgery where his doctor performed anterior transposition of the left ulnar nerve as a well as left carpal tunnel release. By mid-July of 2007, his workers compensation physician reported that Gebhardt had progressed to full work activities without restrictions.

Gebhardt testified in his deposition that he cannot remember a single time where he requested FMLA leave and Exide denied that request. He further testified that no one at Exide ever made any negative comments to him about his use or amount of FMLA leave, or about his workers' compensation claim.

On August 19, 2008, Gebhardt was awarded $50,000 on a running award following a workers' compensation settlement hearing. This award arose out of Gebhardt's injury suffered on March 6, 2003.

On Saturday, August 23, 2008, two of Gebhardt's co-workers, Nancy Arias and Nathan Kendrick, were working near Line 6 at Exide's plant, talking to each other about a work related issue. Gebhardt was near Line 2 — between 23 and 48 feet away — and wanted to get their attention.

Arias was hit in the head with a blue paint pen, also described as a large metal marker.

Arias immediately went to find her supervisor, Jeff Mitchell, to report that she believed Gebhardt threw the paint pen at her. Mitchell asked Arias and Gebhardt to each write down what happened. Arias' statement said that after she was hit in the head, Kendrick told her that Gebhardt threw the paint pen that hit her.

Gebhardt's statement said:

> Saturday at about 8:20 AM I was trying to get Nathan Kendricks attention he was about 25 to 30 feet from me on his stand up fork truck. Nancy Arias was next to him on her truck – they were both in front of line six. I was at line two – I yelled first then I tossed a marker to get his attention it slipped and hit Nancy.

(Emphasis added.)

On Monday, August 25, 2008, Arias came in on her day off to talk to Exide's Human Resources Manager, Jayne Cornish, about the incident.

Cornish began investigating the incident and took statements from Gebhardt, Arias, Kendrick, and two other co-employees who might have witnessed the incident – Frosty Gilbert and Eliazar "Tomas" Torres.

On Wednesday, August 27, 2008, Exide suspended Gebhardt pending further investigation. (Id.)

When Cornish spoke to Gebhardt, he gave an oral statement that conflicted with his prior written statement that he provided on the day of the incident. Specifically, he altered his description of the incident and told Cornish that the paint pen had slipped out of his hand.

5

Torres told Cornish that Gebhardt said "don't talk" to Kendrick and Arias and then threw something. He said that he later saw Gebhardt hiding behind a so-called "doghouse," and told him, "I threw a pen but didn't mean to hit anyone."

On August 29, 2008, Kendrick told Cornish that he and Arias knew that Gebhardt was trying to get their attention, but that they did not immediately acknowledge him. He then saw the paint pen hit Arias in the head. When he looked in the direction the paint pen came from, Kendrick saw Gebhardt hiding behind the doghouse.

At the conclusion of the investigation, Cornish, Woods and John Pfieffer, then plant manager, met and decided to terminate Gebhardt for violating three "Dischargeable Type Offenses": personal conduct, disorderly conduct and safety.

Cornish testified that she did not recall if she was aware of the workers' compensation award before meeting with Woods and Pfieffer to discuss Gebhardt. However, Cornish testified that they did not discuss Gebhardt's workers' compensation award during the conversation when they decided to terminate Gebhardt. Woods stated that he was unaware of Gebhardt's injuries, workers' compensation claim and/or workers' compensation settlement when the decision to terminate Gebhardt's employment was made.

On September 3, 2008, Gebhardt met with Woods, Baker and Cornish, and Cornish informed Gebhardt that he was being terminated.

Gebhardt has agreed that throwing an object while on the floor of the plant would be disorderly conduct, would be considered horseplay, could cause physical injury to a co-worker, could damage the machinery, and is not tolerated by Exide.

*Conclusions of Law*

To support his claim of workers compensation retaliation, the burden is on the plaintiff to show that his termination was based on, because of, motivated by or due to his engaging in protected activity, and he must demonstrate this causal relationship by a preponderance of the evidence that

is clear and convincing in nature. *See, e.g., Peterson v. Exide Technologies, Inc.*, Case No. 09-4122-SAC, 2011 WL 677150 (D. Kan. Feb. 16, 2011) (citing *Foster v. Allied Signal*, 293 F.3d 1187, 1192 (10th Cir. 2002)). See *also Bausman v. Interstate Brands* Corp., 252 F.3d 1111, 1115 (10th Cir. 2001).

Although Gebhardt claims that causation is here demonstrated by the workers' compensation award, which was issued a few weeks before his termination, the court finds that Gebhardt has failed to meet his burden.[1] Here, the underlying injury in Gebhardt's workers' compensation claim occurred in March of 2003, and his treatment ended in mid-2007. He was not terminated until September 3, 2008. Gebhardt conceded in his deposition that no one in Exide management criticized his workers' compensation claim, uncontroverted evidence establishes that the subject was not discussed at the managers meeting which resulted in his termination. There is no evidence that any of the managers even knew of the workers' compensation award at the time of the decision to terminate the plaintiff.

But even if there were some grounds for inferring a causal relationship, summary judgment would still be warranted because Exide has shown a legitimate, non-pretextual motive for the termination. *See Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). Specifically, Exide has shown that its decision to terminate Gebhardt was prompted by his apparent assault of another employee.

There is no basis in the evidence before the court for concluding that this rationale is a pretext for discrimination. Gebhardt's Response alternates between denying that he intentionally threw the paint pen (the pen "slipped out of his hand" and somehow "fell on Arias' head," 15 to 20 feet away (Resp. at 31-32)), and apparently justifying the assault (with Gebhardt arguing that he was the lead worker on the day in question (a fact Exide disputes) and stressing that Arias and Kendrick

---

[1] Additionally, plaintiff argues in his Response that the causal connection may also be demonstrated by Exide's treatment of other workers. While this may be true as a general principle of law, *see Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990), it cannot aid the plaintiff here for the simple reason that he has presented *no testimony* from other workers that they were indeed subjected to illegal retaliation.

7

"were purposely ignoring Mr. Gebhardt's instructions" with their persistent "chit-chatting.") (*Id*. at 16, 31).

The court need not determine that Gebhardt actually and intentionally assaulted Arias. Exide was justified in terminating Gebhardt if it had a reasonable and good faith belief that the assault may have occurred, even if that belief might have be mistaken. Exide's rationale can be deemed pretextual only if it is "so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief." *Morgan v. Hilti, Inc*., 108 F.3d 1319, 1323 (10th Cir. 1997).

Faced with a complaint by Arias, the defendant conducted an investigation which produced reports by a number of co-workers, all of which indicated that Gebhardt had thrown the pen at Arias, striking her in the head. Indeed, Gebhardt initial written version of the incident indicated that his throwing the marker was not an accident, stating, "I yelled first then I tossed a marker to get [Nathan's] attention it slipped and hit Nancy." The only problem, in other words, was his aim. Only later did Gebhardt modify his story to mean that he never intended to use the pen as a missile at all.

Given the information available to the company, Exide's conclusion was not so unreasonable or incoherent as to be unworthy of belief. Accordingly, its decision to terminate Gebhardt for violating company policies cannot be deemed pretextual.

Gebhardt's claim of FMLA retaliation is subject to summary judgment for the same reasons. First, he has failed to show a prima facie case, in that the FMLA leave occurred long before his ultimate termination, negating any inference of causation. Gebhardt unequivocally testified in his deposition that no one at Exide criticized his taking FMLA leave. Exide kept Gebhardt in its employment for years following his FMLA leave, and plaintiff has failed to point to any admissible evidence showing any a causal relationship to the termination. Even if such evidence was available, Exide had, as noted earlier, a legitimate rationale for terminating Gebhardt after the pen tossing incident.

In addition to its Motion for Summary Judgment, Exide has also moved to strike certain portions (¶¶ 8-10) of Gebhardt's affidavit, on the grounds that these statements directly contradict

his prior admissions. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 19867). It also seeks to strike other portions of his affidavit as either irrelevant (¶ 7 stating his personal conclusions as to working conditions at Exide, and ¶ 26, relating evidence from plaintiff's unemployment hearing), or inadmissible (¶¶ 15, 18, and 24, offering observations that are not grounded on personal knowledge). The court finds that the extraordinary remedy of striking the irrelevant or inadmissible portions of Gebhardt's affidavit is unnecessary, and the court is independently able to determine which material facts are uncontroverted. To the extent that the plaintiff's factual allegations are unsupported by reference to admissible evidence, this is reflected in the court's factual findings.

A more substantial issue is posed by the request to strike the portions of the affidavit which fall within the sham affidavit rule. "In determining whether an affidavit creates a sham fact issue, we consider whether: (1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain." *Ralston v. Smith & Nephew Richards, Inc*., 275 F.3d 965, 973 (10th Cir.2001) (quotation omitted).

In his deposition, Gebhardt testified that no one at Exide ever made negative comments about his use of FMLA leave, and specifically denied that Mitchell made negative comments about either FMLA leave or his workers' compensation claims. In his Response to the Motion to Strike, Gebhardt does not explain or defend the inconsistency, other than stating that reading the defendant's summary judgment motion "triggered his recollection" of the alleged statements. (Dkt. 41, at 4). Gebhardt contends that such a rationale is sufficient to explain his about-face, citing the Third Circuit's decision in *Baer v. Chase*, 392 F.3d 609 (3d Cir. 2004).

Baer does not support the plaintiff's position. In that case, the court observed that "[w]hen there is independent evidence in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit. 392 F.3d at 625. The court specifically found that the questionable affidavit testimony was corroborated other evidence.

9

> Baer's ability to point to evidence in the record that corroborates his later affidavit alleviates the concern that he merely filed an erroneous certification out of desperation to avoid summary judgment. Moreover, Chase does not deny receiving the letter [corroborating the affidavit version] and his personal assistant told Baer that Chase, in fact, had received the letter. And finally, Chase himself has provided the letter in discovery. Given this evidence which corroborates the certification, the concern that Baer's claim that he performed services as late as February 10, 1997, is either desperate or erroneous is eliminated....

392 F.3d at 626. The letter was critical, as the court expressly cautioned that "[i]f Baer had advanced only the argument that he had made a mistake, exclusion of the later certification might have been appropriate." *Id*. at 625.

Here, Gebhardt has not pointed to any independent corroborating evidence as to the alleged negative comments by Mitchell or other Exide managers about his use of FMLA leave or his workers compensation claim. The only support for these alleged statements is his affidavit, which directly contradicts his prior deposition testimony, and arose only after Exide filed its Motion for Summary Judgment.

Generally, a party cannot present directly contradictory affidavit testimony based upon "refreshed memory" in the absence of some "credible explanation as to how his recollection was refreshed." *Yeager v. Bowlin*, No. 08-102, 2010 WL 95242, *5 (E.D. Cal. Jan. 6, 2010). *See also Powell v. Mercy Health Ctr.*, No. 09-191-L, 2010 WL 597944, *2 (W.D. Okla. Feb. 17, 2010) (excluding affidavit despite plaintiff's claim that she "recently remembered certain events," where this was not tied to any showing of confusion at the deposition or to newly discovered evidence. *BNSF Ry. Co. v. San Joaquin Valley R.*, No. 1:08-01086-AWI, 2009 WL 3872043, at *7 (E.D.Cal. Nov. 17, 2009) ("innocent lapses of memory, such as a failure to remember one item to a question calling for many items to be recollected, or lack of memory as to precise dates, would be permissible; however, changes from 'yes' to 'no,' or gross departures from original testimony, would not be legitimate").

In the present case, the contradiction between Gebhardt's deposition testimony is direct. The original deposition testimony shows no confusion — no one at Exide made statements disparaging his use of FMLA leave or his workers' compensation claims. Gebhardt was subject to cross-

examination at his deposition, had access to all of the evidence otherwise before the court, and has pointed to no newly discovered evidence which would have refreshed his recollection, or to any independent evidence corroborating the existence of the putative negative comments. The deposition testimony was clear and unambiguous, which the affidavit contradicts without any explanation. *See Van T. Junkins & Assoc. v. U.S. Industries*, 736 F.2d 656, 657 (11th Cir. 1984). The affidavit testimony falls within the sham affidavit rule, and is properly excluded.

IT IS ACCORDINGLY ORDERED, this 27th day of March, 2012, that the defendant's Motion for Summary Judgment (Dkt. 30) is granted; defendant's Motion to Strike (Dkt. 39) is granted in part and denied in part.

 s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE